Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4596 | **DATE** | 2/20/2001 |
| **CASE TITLE** | AL-SALAM MOSQUE FOUNDATION vs. CITY OF PALOS HEIGHTS, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion (10-1) to dismiss is granted/denied in part. Counts III and IV are dismissed. Motion (11-1) to dismiss Count II is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 0 1 2001 | |
| | Notified counsel by telephone. | | date docketed | 17 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | DOCKETING FEB 28 PM 5:26 | date mailed notice | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

AL-SALAM MOSQUE FOUNDATION,

    Plaintiff,

v.

CITY OF PALOS HEIGHTS, et al.,

    Defendants.

No. 00 C 4596
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The Al-Salam Mosque Foundation wanted to buy some property to use for a mosque and school. Conveniently, the Reformed Church in Palos Heights wanted to sell its lot, which included a building used as a Christian church and Sunday school. The two parties negotiated a real estate transaction, but the Foundation had some concerns. It believed the Reformed Church had received a special use permit from the City of Palos Heights to use the property as a church and school, and the Foundation thought it would have zoning issues when it occupied the building. Since it did not want to buy the property without a guarantee that it could be used as a mosque and school, the Foundation negotiated a rider to the contract. The rider states that the deal is contingent on the Foundation receiving written verification from the City of Palos Heights that the Foundation will be allowed to operate a mosque and school on the lot. Without the City's written verification, the contract "shall terminate."

The prospect of a mosque joining the community caused quite a stir in Palos Heights. As alleged in the complaint, the Foundation requested the written verification from the City, and the council held a town meeting to discuss the proposed mosque. Although the City responded with some correspondence (providing a zoning map), it did not give the Foundation a written verification

or special use permit, and the mosque was not able to consummate the real estate transaction. In a related deal, the City Council offered the Foundation $200,000 to buy the rights to purchase the Reformed Church property. The Foundation accepted the offer, but the complaint says the City "has refused to honor the contract."

The Foundation claims the City of Palos Heights violated its right to the free exercise of religion. U.S. Const., amend. I; 42 U.S.C. § 1983; 775 ILCS 35/15 (Illinois Religious Freedom Restoration Act). Plaintiff also alleges that the individual council members and the mayor conspired to violate the free exercise clause. 42 U.S.C. § 1985(3). Finally, plaintiff alleges state law claims for tortious interference with contractual relations (between the Foundation and the Reformed Church) and breach of contract (the $200,000 deal between the City and the Foundation).

Defendants move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). The gist of defendants' argument is: the City could not burden the Foundation's religious conduct because it was not a party to the real estate contract and has no authority to provide written authorizations (essentially advisory opinions); the intracorporate conspiracy doctrine precludes the conspiracy claim; the Tort Immunity Act immunizes the City from tortious interference with contractual relations; and no contract existed between the City and the Foundation – the $200,000 offer was a nullity upon a veto by Mayor Dean Koldenhoven.

Both sides have submitted several documents and made factual allegations that are not part of the complaint. Neither defendant nor plaintiff requests that I convert the motion to one for summary judgment, and I will not do so. I will grant the motion to dismiss only if it appears beyond doubt (from the complaint alone) that the Foundation can prove no set of facts to support its claims. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). However, on a motion to dismiss,

2

I may consider the real estate contract; it is expressly referenced in the complaint and is indisputably central to plaintiff's claim. *Wright v. Associated Ins. Co., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). I also take judicial notice of Mayor Koldenhoven's veto of the Council's offer of $200,000. The fact of the veto is not disputed and is a matter of public record.

### I. Free Exercise Claim (Count I (§ 1983) and Count V (775 ILCS 35/1))

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const., amend. I (1791). As applied to the states by the Fourteenth Amendment, the free exercise clause prohibits local governments from making discretionary (i.e., not neutral, not generally applicable) decisions that burden the free exercise of religion, absent some compelling governmental interest. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 113 S.Ct. 2217, 2226 (1993); *Cantwell v. State of Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903 (1940) (applying free exercise clause to the states). Land use regulation often involves "individualized governmental assessment of the reasons for the relevant conduct," thus triggering *City of Hialeah* scrutiny. *Id.* at 537. For example, local authorities may be asked to decide whether the historic preservation of a district outweighs the financial interests of a specific parcel owner. *Keeler v. Mayor & City Council of Cumberland*, 940 F. Supp. 879, 886 (D. Md. 1996). Thus, zoning is a common source of tension between religious organizations and local authorities, and sends many churches (temples, synagogues or mosques) to the courthouse.[1]

---

[1] *E.g., Boyajian v. Gatzunis*, 212 F.3d 1 (1st Cir. 2000); *Love Church v. City of Evanston*, 896 F.2d 1082 (7th Cir. 1990); *Ira Iglesia de la Biblia Abierta v. Banks*, 129 F.3d 899 (7th Cir. 1997); *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464 (8th Cir. 1991); *Christian Gospel Church, Inc. v. City and County of San Francisco*, 896 F.2d 1221 (9th Cir. 1990); *First Assembly of God of Naples, Florida, Inc. v. Collier County, Florida*, 20 F.3d 419 (11th Cir. 1994); *Western Presbyterian Church v. Board of Zoning Adjustment of District of Columbia*, 862 F. Supp. 538 (D.D.C. 1994); *Daytona Rescue Mission, Inc. v. City of Daytona Beach*, 885 F. Supp. 1554 (M.D. Fla. 1995); *St. Paul's Protestant Episcopal Church v. City of Oakwood*, 1998 WL 1657172 (S.D. Ohio 1998).

3

The denial of a special use permit to an owner of property can burden the free exercise of religion when it interferes with a religious group's ability to set up shop. *City of Chicago Heights v. Living Word Outreach Full Gospel Church and Ministries, Inc.*, 302 Ill.App.3d 564, 571, 707 N.E.2d 53, 59 (1st Dist. 1999); *see also Alpine Christian Fellowship v. County Commissioners of Pitkin County*, 870 F. Supp. 991, 994 (D. Colo. 1994); *but see International Church of the Foursquare Gospel v. City of Chicago Heights*, 955 F. Supp. 878, 880 (N.D. Ill. 1996). This case, however, does not involve the denial of a special use permit. Instead, it involves the failure to issue "written verification" to a prospective purchaser of property. At this stage of the litigation, it is a distinction without a difference.

The City became a condition precedent to consummation through no action of its own, but nevertheless controlled the outcome of the real estate transaction. It had the power to prevent the Foundation from purchasing its mosque. Plaintiff alleges that the City gave the Foundation the runaround, held a town meeting where some rather closed-minded, parochial comments were made concerning plaintiff's religious practices, and then failed to issue a verification or even outright denial -- all driven by religious animus toward Muslims. Plaintiff articulates its first amendment theory as: "[the Foundation] was coerced by the Defendants into being unable to purchase the Reform [sic] Church." Plaintiff's Mem. at 6. The contract, between the Foundation and the Reformed Church, made the City an issue; in a sense, it was the City that was coerced into becoming involved prematurely. Once brought into the fray, however, the City withheld its approval and triggered the contingency. This is sufficient to state a claim because it adequately alleges that the City affirmatively prevented a religious organization from establishing a place of worship, a core religious practice. The only issue defendants take with plaintiff's claim is the argument that the City

4

did not burden the Foundation's exercise of religion. As alleged in the complaint, I find that preventing a group from purchasing land to be used as a mosque is a burden on the exercise of religion.

Once the factual record is properly before me, it may be that the City was powerless to issue any "written verification" because no such procedure existed. It may be that a prospective purchaser cannot request zoning pre-clearance and thus, whatever the City Council's motive, it simply refused to grant the Foundation a special exemption from routine land use process.[2] At this stage, I must take the complaint as true and await a factual record that fully explains plaintiff's requests and the municipal response.[3] Counts I and V state claims.

## II.     Conspiracy (Count II (§ 1985(3)))

Count II says the Aldermen and the Mayor agreed to withhold approval and prevent purchase of the property because of an animus against Islam, thus they conspired in violation of 42 U.S.C. § 1985(3). Although a religion-based conspiracy may state § 1985(3) claim, *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000), the intracorporate conspiracy doctrine precludes such a claim here.

"Managers of a corporation jointly pursuing its lawful business do not become conspirators when acts within the scope of their employment are said to be discriminatory." *Travis v. Gary*

---

[2]     See *e.g., Love Church v. City of Evanston*, 896 F.2d 1082 (7th Cir. 1990) (prospective purchaser has no standing to challenge zoning ordinance); *St. Paul's Protestant Episcopal Church v. City of Oakwood*, 1998 WL 1657172 at *5 (S.D. Ohio 1998) (free exercise clause is not violated when municipality declines to grant an exemption to religious institution); *Boyajian v. Gatzunis*, 212 F.3d at 13 (1st Cir. 2000) (Torruella, C.J., dissenting) ("Frankly, I cannot see that requiring religious users to participate in the ordinary process by which local land-use decisions are made amounts to... a burden on the exercise of religion").

[3]     Given both sides' inclination to submit extrinsic materials, it may be that this claim can be resolved by a motion or cross-motions for summary judgment.

5

*Community Mental Health Center, Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). This applies to governmental entities as well as private corporations. *Wright v. Ill. Dep't of Children and Family Services*, 40 F.3d 1492, 1508 (7th Cir. 1994). The Aldermen and Mayor constitute the managers of the City of Palos Heights; it cannot be disputed that their consideration of a zoning request falls comfortably within the scope of their employment and is in the pursuit of lawful city business -- zoning. An exception exists for conspirators acting solely out of personal bias. *Hartman v. Bd. of Trustees of Community College District No. 508*, 4 F.3d 465, 470 (7th Cir. 1993). In § 1985(3) claims, however, conclusory allegations of bias are not enough to avoid the intracorporate conspiracy doctrine, that would render the rule meaningless. *Id.* The complaint must allege that the Aldermen and Mayor acted solely out of bias, with the City's interests having no role in the decision. The complaint makes no such allegation. Therefore, Count II does not state a claim.

In addition to the intracorporate conspiracy doctrine, absolute legislative immunity shields the individual defendants from Count II. The Seventh Circuit has held that an alderman's participation in introducing and voting for a rezoning ordinance is entitled to absolute legislative immunity. *Ira Iglesia de la Biblia Abierta v. Banks*, 129 F.3d 899, 904 (7th Cir. 1997). This case does not involve the introduction of legislation, but I find that the Aldermen and Mayor's decision to respond (or not respond) to a constituent's request for prospective zoning approval nevertheless falls within the same core of zoning activity that is entitled to immunity. *See id.* at 905-906 (rezoning is a legitimate legislative activity, postponing Zoning Board of Appeals hearing is inextricably intertwined with legislative process). The runaround the defendants gave the

Foundation is akin to postponing a hearing -- it is intertwined with the legislator's role of presiding over zoning requests. For this additional reason, Count II fails to state a claim.[4]

### III. Tortious Interference with Contractual Relations (Count III)

In Count III, the plaintiff says the City, by withholding zoning approval, tortiously interfered with the contract between the Foundation and the Reformed Church. Defendant argues for dismissal solely on the grounds of immunity granted by the Local Government and Governmental Employees Tort Immunity Act. 745 ILCS 10/1-101 *et seq*. In response, the Foundation says an exception to immunity exists for "corrupt or malicious" acts. Plaintiff takes no other issue with the applicability of the Tort Immunity Act to this claim.

The plain language of the relevant sections of the Immunity Act contains no exceptions. *See* 745 ILCS 10/2-103, 2-104, 2-109, 2-201, 2-205. For example, § 2-104 says "a local public entity is not liable for an injury caused... by the failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

Illinois lower courts, however, have held that municipalities (and their employees) are not immune from liability where they have acted out of corrupt or malicious motives. *River Park, Inc. v. City of Highland Park*, 281 Ill.App.3d 154, 162-163, 667 N.E.2d 499, 504-505 (2nd Dist. 1996); *Village of Bloomingdale v. C.D.G. Enterprises, Inc.*, 314 Ill.App.3d 210, 214-215, 732 N.E.2d 633,

---

[4] Because Count II fails to state a claim for two independent reasons, I need not address defendants' third argument that the complaint fails to adequately allege each participant's role in the conspiracy. I note, however, that defendants persuasively suggest that the controversy over the mosque and the debates among the Aldermen and Mayor demonstrates that there was no agreement among all individual defendants to oppose the mosque.

637-638 (2nd Dist. 2000). Meanwhile, the Illinois Supreme Court has adopted a plain language approach to the Act. *In re Chicago Flood Litigation*, 176 Ill.2d 179, 195, 680 N.E.2d 265, 273 (1997) (eliminating exception for willful and wanton misconduct). Although *Chicago Flood* discussed only the willful and wanton misconduct exception, it expressly overruled *Barth v. Board of Education*, 141 Ill.App.3d 266, 272-274, 490 N.E.2d 77 (1st Dist. 1986), a case which identified both the judge-made "corrupt and malicious" and "willful and wanton" exceptions. In contrast to the Second District Court of Appeals, the First District Court of Appeals has held that § 2-205 provides "absolute immunity." *Compare Glenn v. City of Chicago*, 256 Ill.App.3d 825, 843, 628 N.E.2d 844, 856 (1st Dist. 1994), *with Madonna v. Giacobbe*, 190 Ill.App.3d 859, 869, 546 N.E.2d 1145, 1152 (2nd Dist. 1989).

The lower courts' maintenance of any exception to the plain language of the Immunity Act does not follow the reasoning of the Illinois Supreme Court in *Chicago Flood, supra.*, 176 Ill.2d at 196. There, the Court said "the plain language of section 2-201 is unambiguous. That provision does not contain an immunity exception for willful and wanton conduct." *Id.* The Tort Immunity Act, by its terms, also does not contain an exception for corrupt or malicious conduct, and it appears the Illinois Supreme Court interprets the Tort Immunity Act literally. I am required to follow the Illinois Supreme Court in interpreting Illinois law, and based on the Court's analysis in *Chicago Flood*, I find that the Aldermen and Mayor are entitled to immunity for all state law tort claims regardless of their motivation in refusing zoning approval. *See Union Pacific Railroad v. Village of South Barrington*, 958 F. Supp. 1285, 1293 (N.D. Ill. 1997). Count III does not state a claim.

## IV. Count IV (Breach of Contract)

The Foundation says it accepted the City's offer of $200,000 to purchase the rights to buy the Reformed Church, but nothing happened. Offer and acceptance are, of course, essential elements of contract formation. *Hubble v. O'Connor*, 291 Ill.App.3d 974, 979, 684 N.E.2d 816, 820 (1st Dist. 1997). The question raised by defendants, however, is whether the Mayor's veto of the City Council's appropriation voided the offer. I believe it did.

Palos Heights operates under the mayor-council form of government. *See* http://www.palosheights.org/gov/indexg.html. Under such a system, all resolutions and motions that provide for the expenditure or appropriation of the City's money are subject to mayoral veto. 65 ILCS 5/3.1-40-45. In this case, the Mayor vetoed the $200,000 expenditure, and plaintiff does not argue that the veto was untimely or otherwise without effect. The City Council is without authority to bind the City with an appropriation unless it overrides the Mayor's veto. *See Brophy v. City of Joliet*, 14 Ill.App.2d 443, 456, 144 N.E.2d 816, 823 (2nd Dist. 1957) ("There is no contract on which an action can be based where the resolution authorizing it is rescinded before the contract is executed"); *see also Catalano v. Pechous*, 69 Ill.App.3d 797, 800-801, 387 N.E.2d 714, 718 (1st Dist. 1979) (dicta describing city council acceptance of offer from garbage contractor, mayor's veto and council's attempt to override veto).

Plaintiff responds by arguing that the veto was a "political game and sham." Plaintiff fails to explain how this makes the veto unlawful or ineffective. Apparently, the Council believed the veto to have the force of law; it acquiesced to the Mayor's order. There was no offer, therefore there was no contract. Count IV does not state a claim.

9

## V.  Conclusion

Dealing with a city on zoning matters is a delicate business, especially when religious conduct is at issue. Municipalities owe their religious institutions a constitutional duty to tread carefully once involved in zoning issues, and outright hostility to or shameful ignorance of religious faiths is unacceptable. At the same time, however, the business of governing requires municipalities and their employees to be out of reach from most private civil litigation.

For the foregoing reasons, defendants' motion [10-1] to dismiss Counts I, III, IV and V is granted in part/denied in part. Counts III and IV are dismissed. The individual defendants' motion [11-1] to dismiss Count II is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: 20 Jul 2001