# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AL SALAM MOSQUE FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PALOS HEIGHTS,<br><br>    Defendants. | No. 00 C 4596<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Al-Salam Mosque Foundation, attempted to negotiate the purchase of the Reform Church in Palos Heights so that it could use the property as a mosque and school. Because it believed that the Reform Church had received a special use permit from Defendant, the City of Palos Heights, to use the property as a church and school and that there would be zoning issues when it occupied the building, Plaintiff included a rider to the contract stating that the deal would be contingent on Plaintiff obtaining written verification from the City that Plaintiff could use the property as a mosque and school. Plaintiff requested this written verification, and the City responded with some correspondence, but provided no written verification. During this time, the City Council offered Plaintiff $200,000 to buy the rights to purchase the Reform Church property, which Plaintiff reluctantly accepted. But, the City's Mayor, Mr. Koldenhoven, vetoed the Council's offer. At that point, Plaintiff attempted to extend the contract so that it could obtain written verification or a special use permit; those requests were denied. Consequently, Plaintiff exercised its option to nullify the contract based on lack of zoning.

Plaintiff filed suit alleging that Defendant interfered with its free exercise of religion under the First Amendment, 42 U.S.C. § 1983, and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/15. After sitting through the week-long trial, a jury returned a verdict in favor of Defendant. Plaintiff timely filed this motion for a new trial pursuant to Fed. R. Civ. P. 59. According to Rule 59, I may grant a new trial "if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003); *Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997). However, the jury's verdict should be given considerable deference. *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995). A district court may grant a new trial because the verdict was against the weight of the evidence "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience." *Id*. Moreover, the jury's verdict should not be set aside merely because, in reviewing the evidence, I may have reached a different result. *Id*. This is especially true where the jury has based its decision, at least in part, on the credibility of the witnesses' testimony. *Id*. ("since the credibility of witnesses is peculiarly for the jury, it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict").

The greatest challenge facing Plaintiff was proving that the city itself acted in a way that interfered with Plaintiff's right to the free exercise of religion. Under § 1983, municipal liability may only be created by "acts that are, properly speaking, acts 'of the municipality' - that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Even if some actions by public officials may have caused Plaintiff to forego the purchase of the Reform Church, those actions cannot create liability for Defendant

barring Defendant's sanction. For evidence that Defendant acted, Plaintiff first points to a statement by then-Mayor Koldenhoven, saying "the city was interfering by [Plaintiff's] actions." However, Mr. Koldenhoven's statement is not dispositive. There exists a rational basis in the record for the jury to conclude that Mr. Koldenhoven's personal opinion regarding what constitutes city action was not based on an accurate understanding of the law.

Plaintiff next looks for city action in the statements made by Alderman Corsi at a public hearing. Statements by public officials at public hearings do not constitute city action unless the speaker has "authority to adopt rules for the conduct of government." *Rasche v. Beecher*, 336 F.3d 588, 599-600 (7th Cir. 2003) (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992). Alderman Corsi did not have the authority to adopt rules for the conduct of government without the votes of other aldermen and, therefore, her statements do not constitute city action. Even though Plaintiff characterizes Alderman Corsi's statements as her "official word," those statements are Alderman Corsi's, not Defendant's. Plaintiff further argues that Defendant interfered with Plaintiff's First Amendment rights when the City Council voted to offer Plaintiff $200,000 to forego the contract to purchase the Reform Church. But, because of then-Mayor Koldenhoven veto's, the offer was never effectuated.

Plaintiff also argues that Defendant acted by not responding to a letter from Plaintiff's real estate attorney, Mr. Shalabi, requesting information from the city.[1] Though Mr. Shalabi testified

---

[1] Plaintiff makes an independent argument that Defendant's request for a letter from the Plaintiff was itself discriminatory because Defendant treated Plaintiff differently than other prospective real estate purchasers. After Plaintiff's real estate attorney telephoned Defendant to request written verification for use of the Reform Church property, the mayor asked Plaintiff to send him a letter that would detail the action Plaintiff wanted the city to take. No previous purchaser of land had been required to write such a letter, and Plaintiff infers that the request for a letter was fueled by a discriminatory purpose. Conversely, Defendant argued at trial that the

3

that he never received a response to the letter, the jury was free to assess his credibility and may have rejected his testimony. Moreover, assuming Mr. Shalabi never received a formal response, he did learn that the city attorney had informed the Mayor that the zoning in Palos Heights would permit Plaintiff to use the Reform Church as a mosque and a school. Based on the evidence presented to the jury, it had a rational basis to conclude that the mayor believed he had responded sufficiently to the letter. Finally, the subtext of Plaintiff's argument is that Defendant failed to respond prior to the closing date in the contract to purchase the Reform Church, after which point a response would be moot. It is possible that the jury found that the period between Mr. Shalabi's letter and the closing date was an unreasonable amount of time for Defendant to choose its course of action or that Defendant was not bound to abide by the deadline set in the real estate contract.

Plaintiff also tries to find city action in Defendant's failure to provide Plaintiff with a zoning certificate. Defendant maintains that a zoning certificate would be superfluous because Plaintiff's intentions for the Reform Church were already permitted under its current zoning. While Plaintiff may have felt more comfortable moving in with a zoning certificate, the jury was free to adopt Defendant's position that such a certificate would have been legally redundant.

---

mayor requested a letter from Plaintiff to understand what it wanted Defendant to do because Defendant had never previously received such a demand. Plaintiff tries to preempt the jury's ability to conclude that the city faced a novel request from Plaintiff by arguing that the contingency in the contract for sale of the Reform Church that required written verification was a prudent and regular term in a contract. Mr. DeBruyn, the real estate attorney for the Reform Church, testified that the contingency was unusual and there was no evidence that Defendant had ever received a request for written verification previously. Based on the record, the jury was free to adopt Defendant's interpretation of events.

4

Finally, Plaintiff implies that Defendant created confusion regarding the zoning for the Reform Church by referring two different zoning maps– an older one and a newer one. Defendant denies that there was any confusion, arguing that while some individuals were confused, there was only one official map: the most recent official map promulgated by Palos Heights. Even assuming confusion existed, the clear weight of the evidence did not prove that Defendant created the confusion or, if Defendant did create the confusion, that it was done in order to interfere with the free exercise of religion.

While Plaintiff remains unable to prove that Defendant acted to interfere with Plaintiff's First Amendment rights, Plaintiff advances several additional challenges to the jury's verdict. First, Plaintiff challenges the credibility and plausibility of statements made by former mayor Koldenhoven and Alderman Murphy. Mr. Koldenhoven stated that he never saw the contract for the sale of the Reform Church prior to the lawsuit. Plaintiff points to a letter Mr. Koldenhoven sent in April 2000 discussing the purchase price for the Reform Church and the fact that the contract had contingencies. However, Mr. Koldenhoven testified that while he had not seen the actual contract, he knew of some of its terms through word-of-mouth.

Plaintiff next claims that Alderman Murphy lied when he said he believed that Al-Salam was just like a church and could just move into the Reform Church. At trial Alderman Murphy was impeached with past statements where he had said that Al-Salam was different than a church and that it could not just move into the Reform Church. The jury may very well have concluded that Alderman Murphy lied on the stand, but such a finding is not incompatible with the verdict. Even though Alderman Murphy said that a mosque is different from a church, his statements, like

5

those of Alderman Corsi, are his own; they do not constitute city action. *Rasche*, 336 F.3d at 599-600.

Plaintiff also argues that the length of deliberation (two to three hours following about four full days of testimony) indicates that the jury failed to adequately consider the documents given to them and the testimony they witnessed. Plaintiff cites no law to support this proposition– probably because the law on this point cuts the other way. *See e.g. United States v. Cunningham*, 108 F.3d 120, 123-24 (7th Cir. 1997) (stating "the time it takes the jury to decide is not the relevant factor. The weight of the evidence is."); *Guar. Serv. Corp. v. Am. Employers' Ins. Co.*, 893 F.2d 725, 729 (5th Cir. 1990) ("If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial.") (quoting *Marx v. Hartford Accident & Indem*. Co., 321 F.2d 70, 71 (5th Cir. 1963).

Finally, Plaintiff argues that the jury was prejudiced by Defendant's attorneys mentioning that Al-Salam mosque was no longer incorporated, contradicting the agreed statement of facts which read that "the plaintiff is an Illinois corporation which provides religious services and activities." A new trial may be granted in the event of an error in the admission of evidence "only if a significant chance exists that [it] affected the outcome of the trial." *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000). There is not a significant chance that the jury was affected by a single mention of the fact that Plaintiff was no longer incorporated. It is a minor point in this litigation, the significance of which would be very unlikely to affect the opinions of a lay jury. Furthermore, I read the agreed facts to the jury, and sustained Plaintiff's objection to the question in which Defendant mentioned that Al-Salam mosque was no longer incorporated.

For the reasons stated herein, Plaintiff's Motion for a New Trial is DENIED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: August 26, 2005